IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| WILLIE KILPATRICK LUCAS, | ] | |
| Plaintiff; | ] | |
| vs. | ] | 2:11-CV-3587-LSC |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ] | |
| Defendant. | ] | |

MEMORANDUM OF OPINION

I.     Introduction

Plaintiff, Willie Kilpatrick Lucas, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for a period of disability and Disability Insurance Benefits ("DIB"). Mr. Lucas timely pursued and exhausted his administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. Lucas was fifty-two years old at the time of the Administrative Law Judge's ("ALJ's") decision, and he has a high school education. (Tr. at 41, 26.) Plaintiff's past work experiences include employment as a car detailer, waiter, crane operator, machine tender and customer complaint clerk. (Doc. 7 at 4, tr. at 26.)  Mr. Lucas

claims that he became disabled on February 28, 2008, with disabling conditions as follows: "back injury from car accident, gunshot wounds in right and left knees and hips; cannot do prolonged sitting and walking or do any stooping or bending, constant pain." (Doc. 7 at 2, tr. at 134.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. (*Id.*) If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. (*Id.*) The decision depends on the medical evidence in the record. See *Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an

impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. (*Id.*) If they do not, a determination of the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. (*Id.*) If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. (*Id.*) Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. (*Id.*)

Applying the sequential evaluation process, the ALJ found that Mr. Lucas met "the insured status requirements of the Social Security Act through December 31, 2011." (Tr. at 19.) He further determined that Mr. Lucas has not engaged in

substantial gainful activity since the alleged onset of his disability. (*Id.*) According to the ALJ, Plaintiff's "lumbar degenerative disc disease, right knee arthritis, cervicalgia and hypertension" are considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, the ALJ found that these impairments neither meet, nor medically equal, any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 22.) The ALJ did not find Mr. Lucas's allegations to be totally credible, and he determined that Mr. Lucas has the RFC to perform the physical exertional and nonexertional requirements of light work with the following additional limitations:

> He can occasionally lift 20 pounds, frequently lift 10 pounds, stand, sit, and/or walk 6 hours in an 8 hour workday plus a sit/stand option with the ability to alternate sitting and standing as needed and only the occasional use of the right lower extremity for pushing or pulling or foot control (occasionally meaning no more than 2 hours in an 8 hour work day); occasionally climb ramps or stairs; never climb ladders, ropes or scaffolds; frequently balance or stoop; occasionally kneel, crouch, or crawl; and he has no manipulative, visual, or communicative limitations; should avoid all exposure to hazards such as machinery or unprotected heights, but no environmental limitations to extreme heat or cold, wetness, humidity, noise, vibration, fumes, odors, dusts, gases or poor ventilation; plus he has mild to moderate pain.

(Tr. at 23.)

The ALJ determined that Mr. Lucas is unable to perform any past relevant work. (Tr. at 25.) The ALJ noted that, as Plaintiff was forty-nine years old on the alleged onset date, Plaintiff was a "younger individual," but that he subsequently changed age category to "closely approaching advanced age." (Tr. at 26.) The ALJ also noted that Plaintiff has at least a high school education, and is able to communicate in English, as those terms are defined by the regulations. (*Id.*) He determined that transferability of job skills is not material to the determination of disability. (*Id.*) The ALJ then determined that "[c]onsidering claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform," such as general office clerk and cashier. (Tr. at 27.) Accordingly, the ALJ entered a finding that Plaintiff has "not been under a disability, as defined in the Social Security Act, from February 28, 2008, through the date of this decision." (*Id.*)

II.     Standard of Review

The Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See*

*Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. (*Id.*) "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.   Discussion

Plaintiff claims that the ALJ's decision should be reversed and remanded for two reasons. First, he challenges the ALJ's RFC determination on several points. Second, Plaintiff requests remand based on the Medical Vocational Guidelines.

   A.   The ALJ's RFC Determination

The RFC is an assessment which is based upon all of the relevant evidence of a claimant's remaining ability to do work despite his impairments. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1545(a)). The claimant's RFC, along with his or her age, education, and work experience, is considered in determining whether the claimant can work. *Id.* (citing 20 C.F.R. § 404.1520(f)).

Plaintiff first argues that the ALJ's decision is inconsistent because the ALJ stated that no treating source provided an express opinion but then concluded that the treating sources' opinions supported his RFC determination. (Tr. at 25.) When read in context, it is clear that the ALJ's decision noted that none of Plaintiff's treating physicians provided an express opinion specifically regarding Plaintiff's RFC, but that the medical records and notations otherwise provided by Plaintiff's treating physicians still fully supported the ALJ's RFC determination.[1] The Eleventh Circuit has often

---

[1] The exact wording of the ALJ's decision is as follows:

held that an ALJ is not required to use distinct words or phrases to establish that he or she considered a claimant's entire medical condition. *See, e.g., Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). Here, the ALJ considered Plaintiff's entire medical condition during the relevant time period. He first noted that, from December 15, 2007 through 2008, there were no treatment records regarding Plaintiff. (Tr. at 21.) However, on January 20, 2009, Plaintiff presented to the emergency room at Cooper Green Hospital with complaints of left chest pain, chronic mid-back pain, and pain in his left arm. (Tr. at 226-28.) His chest pain was determined to be non-cardiac related and he was discharged with a prescription for hydrochlorothiazide and instructed to follow up with his primary care physician and with physical therapy at Cooper Green Hospital in one week. (Tr. at 229-32.) On July 22, 2009, Plaintiff had

> The treating physicians examined the claimant on a regular and ongoing basis and were familiar with his overall history and complaints. The treating physicians referred the claimant to pain management and physical therapy, attempting to work with him to resolve and manage his complaints of pain as well as prescribed medications as needed. Moreover, the treating physicians documented his response to treatment and noted the increasing requests for narcotic pain medication. **Although no express opinions were offered by the treating physicians, the medical records and notations contained therein are consistent with the residual functioning capacity assessment that the claimant is capable of the residual functioning capacity assessment [sic] as described above.**

(Tr. at 25) (emphasis added).

8

an MRI of his lumbar spine. (Tr. at 243-56.) The MRI was reviewed with the plaintiff on August 3, 2009, and he complained of pain at a level 10. (Tr. at 256-58.) It was noted that Plaintiff had been noncompliant with physical therapy, but additional physical therapy was prescribed. (*Id.*) Two weeks later, Plaintiff returned to Cooper Green Hospital complaining of back pain, and the medications Lortab, Naproxen, and Ranitidine were prescribed. (Tr. at 257.) On December 9, 2009, Plaintiff returned for a follow up requesting a refill of Lortab and refused to consider another medication. (Tr. at 274.) He was referred to the pain clinic and to physical therapy. (*Id.*) A psychiatric evaluation took place on February 11, 2010, where the diagnosis was depressive disorder and cannabis abuse. (Tr. at 274.) At a March 30, 2010, chronic pain class, it was noted that Plaintiff was condescending to others in the class. (Tr. at 273.) On April 2, 2010, it was noted that Plaintiff did not show up for his individual therapy appointment for the second time. (Tr. at 272.) During a chronic pain class on April 6, 2010, it was noted that Plaintiff arrived late and insisted that his pain was all in his head and that he only feels pain when he chooses to feel pain. (Tr. at 271.) There were no restrictions in the record regarding Plaintiff's knee injury and no treating physician made any notation that the plaintiff had an impairment or combination of impairments so "severe" to be disabling. The ALJ considered all of

the above-mentioned notations and treatment notes that were made by Plaintiff's treating sources in his analysis of Plaintiff's entire medical condition, and concluded that they supported an RFC for light work with additional restrictions. (Tr. at 25.) Plaintiff makes no argument as to why the ALJ's wording warrants remand in this case, and the Court can find none.

Plaintiff next argues that the ALJ should have obtained expert medical testimony to properly determine his RFC. The ALJ has a duty to develop the facts fully and fairly and to probe conscientiously for all of the relevant information. *Ware v. Schwieker*, 651 F.2d 408, 414 (5th Cir. 1981). However, in all social security disability cases, the claimant bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding his impairments. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Doughty*, 245 F.3d. at 1278; 42 U.S.C. § 423(d)(5) ("[A]n individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."). Moreover, the claimant's burden is to provide a medical record that is complete, and if he or she fails to do so, the ALJ will make a decision based on the evidence of record. *See* 20 C.F.R. §§ 404.1513(e), 404.1516. In other words, an ALJ is not obligated to seek independent

expert medical testimony before deciding a claim when the record provides sufficient evidence. *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999); 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2); 404.1527(f)(2); 416.927(f)(2) (providing that "[ALJs] *may* [not must] ask for and consider the opinions of medical advisors on the nature and severity of your impairment[s] and whether your impairment[s] equal the requirements of any listed impairment . . .") (emphasis added).

Here, the existing medical evidence of record was sufficient for the ALJ to make a decision, and Plaintiff has not shown why additional medical expert evidence was necessary. The ALJ considered the treatment notes and medical records of multiple physicians, as discussed *supra*, and he also considered the findings of Dr. Adam Ross Nortick, a consultative examiner who reviewed Plaintiff's medical history and examined Plaintiff. (Tr. at 25.) Because of this, the medical record was adequate to permit a finding that the plaintiff was not disabled prior to the last date insured, without requiring an additional consultative examination or the testimony of a medical advisor. *See Wilson v. Apfel*, 179 F.3d at 1278 (finding an ALJ was not obligated to seek additional medical evidence or seek independent expert medical testimony because the evidence in the record was sufficient to support a decision).

Plaintiff also contends that the ALJ failed to address the specific amount of time

Plaintiff could sit and stand in his RFC assessment, merely stating that he could sit and stand "as needed." (Tr. at 23.) The common-sense reading of the ALJ's RFC assessment and the hypothetical question he posed to the VE is that the ALJ contemplated a sit/stand option at will. Plaintiff failed to suggest any way that the ALJ's RFC finding and hypothetical question could be interpreted otherwise. The Eleventh Circuit has rejected a similar argument by a plaintiff, stating, "[a]lthough the ALJ failed to specify the frequency that [the claimant] needed to change his sit/stand position, the reasonable implication of the ALJ's description was that the sit/stand option would be at [the claimant's] own volition." *Williams v. Barnhart*, 140 F. App'x 932, 937 (11th Cir. 2005) (unpublished). Moreover, the VE did not ask the ALJ to clarify the frequency with which Plaintiff needed to sit or stand, indicating that the VE did not need further information to identify jobs Plaintiff could perform, based on Plaintiff's RFC. (Tr. at 63-65.) Plaintiff has not argued that his need to sit or stand prevented him from performing the jobs identified by the VE, which he must do in order to be found disabled. *See* 20 C.F.R. § 404.1520(a)(4)(v), (g); *Doughty,* 245 F.3d at 1278 n.2 (claimant must prove that he is unable to perform the jobs the Commissioner lists); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

Plaintiff next makes the argument that it was inconsistent for the ALJ to give

12

"considerable weight" to the opinions of consultive examiner Dr. Nortick and then find Plaintiff capable of performing light work. The ALJ considered the entire opinion of Dr. Nortick, including his findings that Plaintiff had symptoms of back pain but had not had any back surgery and was not on any regular medication for the problem; that he had chronic degenerative changes to the right knee consistent with a prior gunshot injury to the right knee and that he used a cane more for personal convenience than actual necessity; that there was stiffness but no acute inflammation of the right knee; and that he could perform his customary activities of daily living without a cane and could use his hands and arms without restriction. (Tr. at 20, 205-10.) As noted, the ALJ gave "considerable weight" to Dr. Nortick's opinion in assessing Plaintiff's RFC for light work with additional restrictions. (Tr. at 25.) According to Plaintiff, however, Dr. Nortick's opinion limited him to sedentary work because the physician also indicated Plaintiff was able to "hold six pounds in his hands without difficulty." (Tr. at 25, 208.) Sedentary work is defined in the regulations by, among other things, an ability to lift no more than ten pounds at a time, while light work is defined by, among other things, an ability to lift no more than twenty pounds occasionally with frequent lifting or carrying of objects weighing up to ten pounds. *See* 20 C.F.R. § 404.1567(a)-(b). Dr. Nortick's statement that Plaintiff could hold six pounds in his

hands without difficulty is not inconsistent with the ALJ's RFC determination for light work because Dr. Nortick never indicated that Plaintiff was incapable of lifting twenty pounds occasionally or that he was restricted from lifting ten pounds frequently.

Plaintiff also argues that his x-ray reports support an RFC for sedentary work rather than light work. Dr. Nortick opined that Plaintiff's x-rays revealed that he had mild scoliotic curve and some degenerative changes, and x-rays of Plaintiff's right knee indicated degenerative changes. (Tr. at 207-08). Plaintiff makes no argument as to why these reports are inconsistent with the ALJ's RFC assessment of light work or otherwise limit him to sedentary work. The mere existence of impairments does not reveal the extent to which they limit an individual's ability to work. *See* 20 C.F.R. § 404.1520(d)-(f); *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005). *See also McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) ("[T]he severity of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviations from purely medical standards of bodily perfection or normality.").

In sum, substantial evidence supports the ALJ's RFC assessment for light work with additional restrictions, and Plaintiff's arguments to the contrary are without

merit.

  B. The Medical Vocational Guidelines

Plaintiff also argues that remand is warranted based on the Medical Vocational Guidelines. There are two methods by which an ALJ may carry his burden at step five of the sequential evaluation process: either through use of expert vocational testimony or through use of the Medical Vocational Guidelines, found at 20 C.F.R. Part 404, Subpart P, Appendix 2 ("the grids"). The grids include detailed rules which, based on a claimant's RFC, age, education, and previous work experience, direct a finding of disabled or not disabled. *See Walker v. Bowen*, 826 F.2d 996, 1002 (11th Cir. 1987). They are only applicable, however, when a claimant can perform unlimited types of work at a given functional level. *Allen v. Sullivan*, 880 F.2d 1200, 1202 (11th Cir. 1989). The grids thus reflect administrative notice of the numbers of jobs that exist throughout the national economy at the various functional levels. 20 C.F.R. Part 404, Subpart 2, Appendix 2, § 200.00(b). However, the ALJ is required to consult with a VE when a claimant's exertional limitations prevent the claimant from performing a full range of employment at a particular level or when a claimant has nonexertional limitations that significantly limit basic work skills. *Phillips v. Barnhart*, 357 F.3d 1232, 1242-43 (11th Cir. 2004).

Here, the ALJ properly consulted a VE to determine the extent to which Plaintiff's additional limitations impeded his ability to perform a full range of light work. (Tr. at 26.) Plaintiff contends, however, that he is disabled according to Grid 201.14 because he is limited to sedentary work, is closely approaching advanced age, has a high school education, and no transferrable skills. *See* 20 C.F.R. § Part 404, Subpart P, Appendix 2, § 201.14.  While Grid 201.14 would mandate a finding of disabled if a claimant met all of the requirements of its rubric, Grid 201.14 does not apply to Plaintiff because he has not demonstrated that he is limited to sedentary work. As discussed in section III.A., *supra*, Plaintiff' contention that Dr. Nortick's opinion proves that he is limited to sedentary work is without merit. Plaintiff also argues that his RFC "is more consistent with a sedentary RFC" because it limits him to occasionally using ramps and stairs, and using his right leg for foot controls. (Tr. at 23.) However, the VE identified jobs classified as light that Plaintiff could do, based on the ALJ's RFC assessment. The VE stated that his testimony was consistent with the Dictionary of Occupational Titles. *See* U.S. Dep't of Labor, Dictionary of Occupational Titles ("DOT") (4th ed. 1991). Plaintiff has not challenged the VE's testimony or otherwise argued that he cannot perform the jobs that the VE identified, which he must do in order to be found disabled. *See* 20 C.F.R. § 404.1520(a)(4)(v),

(g); *Doughty*, 245 F.3d at 1278 (11th Cir. 2001) (claimant must prove that he is unable to perform the jobs the Commissioner lists); *Jones*, 190 F.3d at 1228.  As such, Plaintiff has not established that he should be found disabled in accordance with Grid 201.14.

IV.   Conclusion

Upon review of the administrative record, and considering all of Mr. Lucas's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law.  A separate order will be entered.

Done this 4th day of December 2012.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
[160704]